UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBIN FELLDIN, an individual,

Plaintiff,

v.

GRANT & WEBER, INC., a Nevada corporation,

Defendant.

No. 2:15-cv-0891 WBS AC (TEMP)

FINDINGS AND RECOMMENDATIONS

Pursuant to Local Rule 302(c)(19), this matter came before the court on January 13, 2016, for hearing of plaintiff's motion for default judgment. ECF No. 23. Attorney Jim Price appeared on behalf of the plaintiff. No appearance was made on behalf of the defendant. At that time oral argument was heard and the motion was taken under submission.

Upon review of the motion and the supporting documents, and good cause appearing, THE COURT FINDS AS FOLLOWS:

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's complaint alleges as follows. Plaintiff had a debt with Sutter Delta Medical Center in the amount of $350.06. ECF No. 1 at 1.[1] On August 20, 2014, plaintiff paid that debt

[1] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

in full. Id. On August 23, 2014, plaintiff sent defendant, Grant & Weber, Inc., a letter showing proof of plaintiff's satisfaction of her debt and demanding that the defendant cease contacting plaintiff. Id. On December 1, 2014, defendant sent plaintiff a letter seeking to collect "an amount which was not authorized by the agreement creating the debt or permitted by law." Id. at 2.

On April 24, 2015, plaintiff commenced this action by filing a complaint and paying the required filing fee. ECF No. 1. Plaintiff's complaint alleges claims for violation of the Rosenthal Fair Debt Collection Practices Act, ("RFDCPA"), California Civil Code §§ 1788, *et seq.*, the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, negligence and negligent training. Id. at 3-6. Plaintiff's complaint seeks statutory, actual and punitive damages, as well as reasonable attorney's fees and costs. Id. at 6.

The summons and complaint were served on the defendant by personal service on May 12, 2015. ECF No. 5; FED. R. CIV. P. 4(e)(2); Pacific Atlantic Trading Co. v. M/V Main Express, 758 F.2d 1325, 1331 (9th Cir. 1985) (default judgment void without personal jurisdiction). On July 20, 2015, plaintiff filed a notice of settlement. ECF No. 6. However, on September 14, 2015, plaintiff filed a request for entry of default[2], (ECF No. 8), and the clerk entered default against defendant on September 15, 2015. ECF No. 10.

Plaintiff filed a motion for default judgment on October 28, 2015, but incorrectly noticed the motion for hearing before the assigned District Judge. ECF No. 13. On November 16, 2015, plaintiff filed the pending motion for default judgment, and noticed the matter for hearing before the undersigned.[3] ECF No. 17. Plaintiff's request for entry of default and the instant motion for default judgment and supporting papers were served by mail on the defendant. ECF Nos. 8-2 & 20. Plaintiff seeks an entry of default judgment on plaintiff's claims that the defendant violated the FDCPA and the RFDCPA and seeks $2,000 in statutory damages in addition to reasonable attorney's fees and costs. ECF No. 17 at 9.

---

[2] Plaintiff's request for entry of default explained that, although the parties had reached a settlement agreement, defendant "never executed the settlement agreement nor delivered a settlement check" to plaintiff. ECF No. 8 at 2.

[3] The hearing of plaintiff's motion for default judgment was continued to January 13, 2016, to allow plaintiff time to serve defendant with notice of the motion. ECF No. 19.

LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See FED. R. CIV. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see FED. R. CIV. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law") (citation and quotation marks omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's

default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

DISCUSSION

**A. The Eitel Factors**

**1. Factor One: Possibility of Prejudice to Plaintiff**

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Here, plaintiff would potentially face prejudice if the court did not enter a default judgment. Absent entry of a default judgment, plaintiff would be without another recourse for recovery. Accordingly, the first Eitel factor favors the entry of default judgment.

**2. Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The undersigned considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together because of the relatedness of the two inquiries. The undersigned must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F.Supp.2d at 1175. Plaintiff seeks entry of default judgment on her claims that the defendant violated 15 U.S.C. § 1692c(c) and California Civil Code § 1788.17.[4] ECF No. 17 at 5-6.

> Congress passed the FDCPA in 1977 with the stated purposes of eliminating "abusive debt collection practices," ensuring "that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged," and promoting "consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). In furtherance of these purposes, the FDCPA bans a variety of debt collection practices and allows individuals to sue offending debt collectors.

[4] At the January 13, 2016 hearing of plaintiff's motion for default judgment, plaintiff withdrew her claim for defendant's alleged violation of 15 U.S.C. § 1692d.

Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1207-08 (9th Cir. 2013).

"To state a claim under the FDCPA, a plaintiff must allege facts that establish the following: (1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a 'debt collector' under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." Pratap v. Wells Fargo Bank, N.A., 63 F.Supp.3d 1101, 1113 (N.D. Cal. 2014).

Here, plaintiff's complaint alleges that defendant "is a 'debt collector' as defined by 15 U.S.C. § 1692a," that the defendant attempted to collect a consumer debt from plaintiff and that the defendant contacted plaintiff after plaintiff demanded that defendant "not contact her again." ECF No. 1 at 1, 3. In this regard, 15 U.S.C. § 1692c(c) "provides that a debt collector must cease communication with a consumer who has requested the same in writing." Webster v. ACB Receivables Management, Inc., 15 F.Supp.3d 619, 626 (D. Md. 2014); see also Smith v. ARS Nat. Services Inc., 102 F.Supp.3d 1276, 1278 (M.D. Fla. 2015) ("FDCPA's requirement that a debt collector cease further communication with a consumer is triggered when a consumer notifies a debt collector in writing that (1) the consumer refuses to pay a debt or (2) that the consumer wishes the debt collector to cease communications regarding the debt").

"Under the plain language of [California Civil Code] § 1788.17, any conduct by a debt collector which violates the federal FDCPA necessarily violates the [RFDCPA] as well." Robinson v. Managed Accounts Receivables Corp., 654 F.Supp.2d 1051, 1060 (C.D. Cal. 2009); see also Sanchez v. Client Services, Inc., 520 F.Supp.2d 1149, 1159 (N.D. Cal. 2007) ("The Rosenthal Fair Debt Collection Practices Act incorporates provisions 1692b to 1692j of the federal fair debt collection practices act.").

Thus, insofar as the merits of plaintiff's statutory claims and the sufficiency of her pleadings under the Eitel factors are concerned, the complaint and record before the undersigned favor entry of default judgment.

/////

/////

**3. Factor Four: The Sum of Money at Stake in the Action**

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, plaintiff's motion for default judgment seeks statutory damages of $2,000 plus attorney's fees and costs. This amount appears to be in relation to the seriousness of defendant's conduct. This factor thus weighs in favor of a default judgment.

**4. Factor Five: The Possibility of a Dispute Concerning Material Facts**

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting her claims and a declaration in support of her allegations. ECF No. 17-3. Moreover, because the defendant has not appeared in this lawsuit, the court has no way to know if any of the facts alleged in the complaint would be disputed if this matter were litigated on the merits. This factor thus does not weigh against entry of a default judgment. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F.Supp.2d at 1177.

**5. Factor Six: Whether the Default Was Due to Excusable Neglect**

Upon review of the record before the Court, the undersigned finds that the default was not the result of excusable neglect. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Plaintiff personally served the defendant with the summons and complaint. Moreover, plaintiff served defendant by mail with notice of her application for default judgment. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendant failed to appear in this action. Thus, the record supports a conclusion that the defendant has chosen not to defend this action, and not that the default resulted from any excusable neglect.[5] Accordingly, this Eitel factor favors the

[5] In addition to the above, the undersigned notes that it appears that the parties' reached a settlement agreement but that the defendant failed to execute that agreement, which further supports the conclusion that defendant's default was not the result of excusable neglect. ECF No. 6.

entry of a default judgment.

**6. Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits**

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, standing alone, this preference cannot preclude default judgment. See United States v. Espinor, No. 2:14-cv-0578 MCE AC (PS), 2016 WL 2880191 at *5 (E.D. Cal. May 17, 2016) (this policy "does not preclude default judgment where, as here, the defendants fail to appear or defend themselves after due notice"). Otherwise, Rule 55(b) of the Federal Rules of Civil Procedure – which provides for a default judgment without a determination on the merits – would have no meaning. In this regard, "[w]here, as here, defendants fail to respond to a Complaint, a decision on the merits is impractical, if not impossible." Penpower Technology Ltd. v. S.P.C. Technology, 627 F.Supp.2d 1083, 1093 (N.D. Cal. 2008).

Accordingly, although the undersigned is cognizant of the policy favoring decisions on the merits - and consistent with existing policy would prefer that this case be resolved on the merits - that policy does not, by itself, preclude the entry of default judgment.

Upon consideration of the Eitel factors, the undersigned concludes that plaintiff is entitled to the entry of default judgment against the defendant and will make a recommendation to that effect. What remains is the determination of the amount of damages to which plaintiff is entitled.

**B. Terms of Judgment**

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. Plaintiff seeks $2,000 in statutory damages—$1,000 for defendant's violation of the FDCPA and $1,000 for defendant's violation of the RFDCPA. ECF No. 17 at 9.

Pursuant to the FDCPA, a prevailing plaintiff may receive up to $1,000.00 in statutory damages. 15 U.S.C. § 1692k(a)(1). Statutory damages are available under the FDCPA "without proof of actual damages." Baker v. G. C. Services Corp., 677 F.2d 775, 781 (9th Cir. 1982). In determining the amount of statutory damages, "the court shall consider, among other relevant factors . . . the frequency and persistence of noncompliance by the debt collector, the nature of

such noncompliance, and the extent to which such noncompliance was intentional . . . ." 15 U.S.C. § 1692k(b).

The RFDCPA provides that a debt collector who violates the statute shall be liable to an individual plaintiff "in an amount equal to the sum of any actual damages sustained by the debtor as a result of the violation." CAL. CIV. CODE § 1788.30(a). Moreover, a "debt collector who willfully and knowingly violates" the statute's provisions shall face additional liability "for a penalty in such amount as the court may allow, which shall not be less than one hundred dollars ($100) nor greater than one thousand dollars ($1,000)." "Remedies under the FDCPA and the RFDCPA are cumulative and penalties may be awarded under both statutes." Page v. Performance Debt Resolution, No. C-12-4029 EDL, 2013 WL 621197, at *5 (N.D. Cal. Jan. 30, 2013).

Here, plaintiff's complaint alleges that the defendant sent plaintiff a single collection letter after plaintiff had instructed defendant to cease contacting her. That is the entirety of defendant's alleged wrongful conduct. Moreover, the complaint and the motion for summary judgment fail to allege that plaintiff suffered any monetary damages or that the defendant's conduct was done willfully or knowingly. Instead, the complaint alleges that defendant's actions "constitute[d] negligence." ECF No. 1 at 5.

Accordingly, the undersigned recommends that plaintiff be awarded $350 in statutory damages for defendant's violation of the FDCPA and $0 in statutory damages under the RFDCPA. See Davis v. Hollins Law, 25 F.Supp.3d 1292, 1296-97 (E.D. Cal. 2014) (awarding $250 for "one-time" violation of FDCPA and no statutory damages "under the Rosenthal Act" where plaintiff failed to show defendant acted "willfully and knowingly"); Cuevas v. Check Resolution Services, No. 2:12-cv-0981 KJM KJN, 2013 WL 2190172, at *11-12 (E.D. Cal. May 20, 2013) (recommending award of $150 for violations of FDCPA and $100 for violations of RFDCPA where defendant "made a false representation in 'calls' occurring on just one day" and "allegedly falsely mentioned a pending civil claim"); Jamal v. Thompson & Associates, P.C., No. C-09-4249 MHP (BZ), 2010 WL 678925, at *4 (N.D. Cal. Feb. 25, 2010) ("since the violation occurred only once and plaintiff provides no evidence to suggest that such noncompliance was

intentional, I recommend that plaintiff be awarded $300 under the FDCPA and $300 under the RFDCPA"); cf. Esget v. TCM Financial Services LLC, No. 1:11-cv-0062 AWI BAM, 2014 WL 258837, at *7 (E.D. Cal. Jan. 23, 2014) (finding "maximum penalty is warranted" based on defendant's "improper communications," "threats to take actions," and "repeated calls").

Plaintiff's motion for default judgment also seeks reasonable attorney's fees and costs. ECF No. 17 at 7-9. Both the FDCPA and the RFDCPA provide for an award of costs and reasonable attorney's fees to a prevailing plaintiff. 15 U.S.C. § 1692k(a)(3); CAL. CIV. CODE § 1788.30(c). The Ninth Circuit employs the lodestar approach to determine whether a fee request is reasonable. Jordan v. Multnomath County, 815 F.2d 1258, 1262-63 (9th Cir. 1987). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expected on the litigation by a reasonable hourly rate." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) ("District courts must calculate awards for attorneys' fees using the 'lodestar' method). The lodestar is deemed to be presumptively reasonable, though the district court has the discretion to consider an upward or downward adjustment. Camacho, 523 F.3d at 978.

Here, plaintiff requests attorney's fees for a total of 18.9 hours of attorney time at a rate of $450 per hour.[6] With respect to the number of hours expended, the undersigned finds that 18.9 hours is a reasonable number of hours to have expended in this action. See Mulvihill v. St. Amant & Associates, No. 2:13-cv-0080 TLN DAD, 2014 WL 1665229, at *4 (E.D. Cal. Apr. 24, 2014) (finding 12.2 hours expended in FDCPA reasonable); Torres v. Bernstein, Shapiro & Associates, L.L.C., No. 2:10-cv-2507 KJM DAD, 2012 WL 2376401, at *5 (E.D. Cal. June 22, 2012) (finding 13.5 hours expended on motion for default judgment on claim of FDCPA violation reasonable).

/////

---

[6] Although plaintiff's motion for default judgment seeks only 17.9 hours of attorney time, at the January 13, 2016 hearing plaintiff's counsel requested an additional hour attending the hearing of the motion.

With respect to plaintiff's requested hourly rate, plaintiff has provided a declaration from her attorney, Jim Price, establishing that plaintiff's counsel is an experienced litigator. ECF No. 17-1. Plaintiff argues that, in light of Mr. Price's experience, his requested rate of $450 per hour is reasonable. ECF No. 17 at 7-8.

However, in assessing applications for attorney's fees the reasonable hourly rates are to be calculated according to the prevailing market rates in the relevant legal community. Blum v. Stenson, 465 U.S. 886, 895 (1984); see also Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011) ("We have held that '[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'") (quoting Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210-11 (9th Cir. 1986)). It is also the general rule that the "relevant legal community" is the forum district and that the local hourly rates for similar work should normally be employed.[7] See Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013); Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010); Gates v. Rowland, 39 F.3d 1439, 1449 (9th Cir. 1994); Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).

Courts in this district have typically awarded rates significantly lower than the $450 an hour plaintiff seeks for similar work performed by attorneys of comparable skill, experience, and reputation. See, e.g., Allmendinger v. Oxford Law, LLC, No. 2:14-cv-1990 KJM EFB (TEMP), 2016 WL 146230, at *5 (E.D. Cal. January 12, 2016) (awarding rate of $300 per hour for similar work to "an experienced and able litigator"); Davis, 25 F.Supp.3d at 1300 (awarding rate of $387 per hour); Mulvihill v. St. Amant & Associates, No. 2:13-cv-0080 TLN DAD, 2014 WL 1665229, at *4 (E.D. Cal. Apr. 23, 2014) (awarding rate of $290 per hour). In this regard, the undersigned finds that a rate of $350 per hour is more consistent with the rate prevailing in this community for similar work performed by attorneys of comparable skill, experience, and reputation. See Johnson v. Patel, CIV. NO. 2:14-2078 WBS AC, 2016 WL 727111, at *3 (E.D.

[7] "The prevailing party may be awarded the reasonable rates of another legal community when it has tendered evidence that attorneys adequate to conduct the litigation at issue were unavailable in the forum market." L.H. v. Schwarzenegger, 645 F.Supp.2d 888, 893 (E.D. Cal. 2009). Here, plaintiff has tendered no such evidence.

Cal. Feb. 23, 2016) (finding $300 per hour to be a reasonable hourly rate); McBride v. Delaware Solutions, LLC, No. 2:15-cv-1222 MCE KJN, 2015 WL 5882395, at *5 (E.D. Cal. Oct. 5, 2015) ("the court concludes that an hourly rate of $300.00 is more appropriate); Gauchat-Hargis v. Forest River, Inc., No. 2:11-cv-2737 KJM EFB, 2013 WL 4828594, at *10 (E.D. Cal. Sept. 9, 2013) ("Courts in the Eastern District repeatedly have found $250 per hour to be a reasonable rate for attorneys bringing actions under the Fair Debt Collection Practices Act").

With respect to costs, plaintiff's motion seeks an award of costs in the amount of $470, representing plaintiff's filing and service of process costs. ECF No. 17-1 at 3. "'Even though not normally taxable as costs, out-of-pocket expenses incurred by an attorney which would normally be charged to a fee paying client are recoverable as attorney's fees.'" Molina v. Creditors Specialty Service, Inc., No. CIV. S-08-2975 GEB GGH, 2010 WL 235042, at *4 (E.D. Cal. Jan. 21, 2010) (quoting Chalmers, 796 F.2d at 1216 n. 7); see also Lowe v. Elite Recovery Solutions L.P., No. CIV S-07-0627 RRB GGH, 2008 WL 324777, at *7 (E.D. Cal. Feb. 5, 2008). The non-taxable costs of filing and serving the complaint fit this description.

Accordingly, the undersigned recommends that plaintiff be awarded $470 in costs, as well as 18.9 hours of attorney time at a rate of $350 per hours, totaling $6,615 in attorney's fees, for a total award of fees and costs of $7,085.

CONCLUSION

For the reasons stated above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's October 28, 2015 motion for default judgment, (ECF No. 13), re-noticed for hearing on November 16, 2015, (ECF No. 17), be granted;

2. Default judgment be entered against defendant Grant & Weber, Inc., and in favor of plaintiff in the total amount of $7,435, comprised of an award of $350 in statutory damages pursuant to 15 U.S.C. § 1692c(c), $6,615 in attorney's fees and $470 in costs; and

3. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir.1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: June 16, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE